United States District Court
Southern District of Texas
**ENTERED**
August 08, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BAUER-PILECO, INC., | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:14-CV-92 |
| | § | |
| NORTH AMERICA CONSTRUCTION (1993) | § | |
| LTD., | § | |
| | § | |
| Defendant. | § | |

## ORDER AND OPINION

Before the Court is Defendant North America Construction (1993) Ltd.'s ("NAC's") Motion for Partial Summary Judgment. (Document No. 39). Plaintiff Bauer-Pileco Inc. ("Bauer") has filed a Response thereto (Document No. 46), and NAC has filed a Reply. (Document No. 47). Having considered these filings, the facts in the record, and the applicable law, the Court concludes that Defendant's Motion (Document No. 39) should be granted.

**Background**

*Lost rental fees*

This case centers on a Rental Contract for Rig #120 (the "Rig"), signed in October 2012, under which NAC agreed to rent the Rig for $49,500.00 per month. (Document No. 26-1 at 2). However, the Rig was accidentally damaged during shipment on approximately November 27, 2012. *Id*. at 4. "In the months after the accident, Bauer repeatedly requested that NAC pay for the repairs necessary[1] to return the damaged Rig #120 to safe and proper use and pay for the rental of Rig #120. NAC repeatedly refused to pay for necessary repairs to Rig #120 and the rental of the Rig #120." *Id*. at 5. The damaged Rig was returned to Bauer's Houston office on or around

---

[1] In its Amended Complaint, Bauer states that "[s]ince the filing of this lawsuit, the issue of the cost to repair Rig #120 has been resolved. Therefore, Bauer no longer seeks the amount demanded for repair of Rig #120." (Document No. 26-1 at 7).

August 23, 2013. *Id*. at 4. "[O]n or about January 19, 2015 Bauer received payment from its own insurance company for the damaged Rig #120 in the amount of $725,000.00." *Id*. at 8.

Bauer has filed a breach of contract claim relating to the Rig. *Id*. Bauer states that:

> NAC's failure to return the equipment, Rig #120, in ready-to-rent condition is a breach of the Rig #120 Rental Contract and is effectuating a failure to return the Rig #120 at all. Bauer was unable to monetize the Rig #120 for its customary rental rate because of NAC's refusal to pay for repair of Rig #120.
> Accordingly, Bauer seeks rent in the amount of $1,336,500.00, which represents the amount owed by NAC from November 16, 2013[2] (the date Rig #120 shipped) to January 19, 2015 (the date Bauer received payment from its insurance company for the damaged Rig #120) at $49,500 per month for 27 months.

*Id*. at 9. Bauer claims that NAC has breached the contract and is in default:

> At the option of BAUER-PILECO, [NAC] shall be deemed in default hereunder if [NAC]:
> (a) Fails to pay rental payments pursuant to this Rental Contract;
> (b) Fails to perform any of its obligations under this Rental Contract;
> * * *
> (e) Fails to maintain the Equipment in accordance with the terms and conditions of this Rental Contract . . .
> * * *
> Upon the occurrence of any of the above events of default, BAUERPILECO may, at its option, and without demand or notice exercise any or all of the following remedies:
> (1) Accelerate the rental obligation and file suit therefor . . . .

*Id*., Exhibit B at 6, ¶12. Bauer also alleges that NAC failed to maintain the Equipment as required by paragraph 13 of the contract:

> [NAC] agrees to keep the Equipment in the same condition as when the Equipment is received by [NAC]. [NAC] is solely responsible for all required and scheduling maintenance as set forth in the Manufacturer's Operation and Maintenance Manual at [NAC's] expense, unless otherwise covered by the manufacturer's warranty. [NAC] agrees to return the Equipment to BAUER-PILECO in the same condition as when received – in a clean and ready-to-rent condition, less normal wear, [NAC] is liable for any loss or damage to the Equipment beyond normal wear. [NAC] agrees to make adequate provision for the safety and security of the Equipment during the term of this Rental Contract.

---

[2] This date conflicts with the 2012 date stated above (Document No. 26-1 at 4) and in Defendant's Motion for Partial Summary Judgment. (Document No. 39 at 5). For the purposes of this order, the Court will assume the shipment took place in 2012.

*Id*. at 6, ¶13. Because the Rig was not returned in "ready-to-rent" condition, Bauer argues that it is entitled to lost rents, as the failure to return the Rig in ready-to-rent condition was a failure to return the Rig at all. (Document No. 46 at 7-8).

*Depreciation*

Bauer also seeks $209,812.50 in damages for depreciation of the Rig. (Document No. 26-1 at 12). The depreciation claim "is to account for the discounted price Rig #120 was eventually sold for," or the "'diminished value' of the rig, which is the loss in the market value of a rig due to market perceptions that a repaired rig is worth less than the same rig that has never been damaged." (Document No. 46 at 13). The specific number was calculated as "15%[3] of $1,398,750.00," which the parties agree was the market value of the Rig in October 2012. (Document No. 46-3 at 3, 5). On April 30, 2015, Bauer sold the unrepaired Rig to Drill Tech Drilling & Shoring, Inc. "for $458,000 plus tax which totaled $499,220.00." *Id*. at 4.

**Standard of Review**

Summary judgment under Federal Rule of Civil Procedure 56(c) is appropriate when, viewing the evidence in the light most favorable to the nonmovant, the court determines that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A dispute of material fact is "genuine" if the evidence would allow a reasonable jury to find in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**Discussion**

*Lost rental fees*

Defendant NAC requests summary judgment on Bauer's claim for lost rentals from

---

[3] Plaintiff states that this is the industry standard for one year of depreciation. (Document No. 46-3 at 3).

September 16, 2013 (the end of the monthly rental after the Rig was returned on August 23, 2013) through January 19, 2015 (the date that Bauer received payment from its insurance company). (Document No. 39 at 7). NAC argues that the contract "does not permit a lost rental claim after Rig 120's return." *Id*. The contract states:

> All rentals of the Equipment are payable in advance and begin on the day the Equipment is shipped to CUSTOMER and will end on the day the Equipment is returned by CUSTOMER to BAUERPILECO. Monthly rent shall be due on the same day as the date the first payment is due for every consecutive month until the Equipment is returned to BAUER-PILECO.

(Document No. 26-1, Exhibit B at 6, ¶5). Because this language limits the rental term to the date of the return of the Equipment, NAC argues that Bauer cannot claim lost rent after the Rig's return. (Document No. 39 at 8).

In its Response, Bauer states that, courts "must examine the entire written agreement to harmonize and effectuate all of the provisions [of the contract] to ensure that none of the provisions will be rendered meaningless." (Document No. 46 at 6) (citing *Valley Reg'l Med. Ctr. v. Wright*, 276 F. Supp. 2d 620, 627-628 (S.D. Tex. 2001)). Bauer argues that, considering the contract as a whole, the failure to return the Rig in ready to rent condition is a breach of the contract, and is "in essence, a failure to return Rig #120 at all." *Id*. at 8. Thus if the Court were to follow Defendant's interpretation, the provisions of the contract regarding return of the Rig in ready-to-rent condition would be rendered meaningless.

NAC replies with similar arguments as above, and adds that, even assuming the damage to the Rig is an instance of default, the remedy for that default is acceleration of the rental obligation. (Document No. 47 at 6). That acceleration could only be to the end of the month of default, as the contract does not have a defined term, but is month-to-month.[4] *Id*.

The Court agrees with NAC that, under the contract, Bauer cannot recover rental fees for

---

[4] The fact that the Rig was rented on a monthly basis is not in dispute.

the months after the Rig was returned. "When parties disagree over the meaning of an unambiguous[5] contract, '[t]he intent of the parties must be taken from the agreement itself, not from the parties' present interpretation, and the agreement must be enforced as it is written.'" *Texas v. Am. Tobacco Co.*, 463 F.3d 399, 407 (5th Cir. 2006) (quoting *Purvis Oil Corp. v. Hillin*, 890 S.W. 2d 931, 935 (Tex. App.- El Paso 1994, no writ)). Here, the contract clearly states that rental fees will end "on the day the Equipment is returned by CUSTOMER to BAUERPILECO." (Document No. 26-1, Exhibit B at 6, ¶5). The contract does not provide for continued rental fees if the Rig is not returned in ready-to-rent condition; it only provides for rental fees until the Rig is returned. *Id*. However this does not make the contractual provisions regarding return of the Rig in ready-to-rent condition meaningless;[6] those provisions *do* provide a remedy for damage to the Rig. That remedy, though, is NAC's liability "for any loss or damage to the Equipment beyond normal wear," not lost rental fees. *Id*. at 6, ¶13. If, as Bauer states in its Amended Complaint, "the issue of the cost to repair Rig #120 has been resolved," then Bauer has exhausted this remedy. (Document No. 26-1 at 7).

Furthermore, although NAC defaulted on the contract by failing to make rental payments, failing to perform its obligations, and failing to maintain the Rig, the remedy provided for default is the acceleration of the rental obligation. (Document No. 26-1, Exhibit B at 6, ¶12). Defendant notes that its default could have "occurred on November 27, 2012, when the rig was initially damaged, or, at the latest, when the rig was returned to Bauer on August 23, 2013." (Document No. 47 at 6). Because the contract is month-to-month, without a guaranteed term, the

---

[5] Neither party argues that the contract is ambiguous.
[6] Plaintiff is correct that "[c]ontracts are construed in their entirety and it is the Court's duty 'to consider each part with every other part so that the effect and meaning of one part on any other part may be determined.'" *Texas v. Am. Tobacco Co.*, 463 F.3d 399, 408 (5th Cir. 2006) (quoting *Smart v. Tower Land & Inv. Co.*, 597 S.W. 2d 333, 337 (Tex. 1980)).

acceleration of the rental obligation only provides acceleration to the end of the month of the default. (Document No. 39 at 4 n.5) (citing evidence that the contract is month-to-month). The latest that this could be, then, is through September 16, 2013, which is the same result as above. (Document No. 47 at 6). Therefore Defendant is entitled to summary judgment on this issue; under the terms of the contract, Plaintiff cannot recover lost rental fees after the return of the Rig.

*Depreciation*

NAC files for summary judgment on this claim, asserting that "[a]fter extensive research, NAC has found no case permitting the recovery of property depreciation damages from a third party when the property was ultimately never repaired and, instead, was sold after an insurer fully paid the property damage claim." (Document No. 39 at 11). Therefore, recovery of depreciation would result in a "duplicative damage award." *Id*. In response, Bauer argues that "Bauer's decision not to repair the rig does not preclude it from requesting its depreciation damages because Bauer has not been made whole for NAC's breach of contract" and that "Bauer's request for depreciation damages is not a double recovery." (Document No. 46 at 1-2).

"Texas law[7] does not permit double recovery." *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 441 (Tex. 1995) (citing *Southern Co. Mut. Ins. Co. v. First Bank & Trust*, 750 S.W.2d 170, 173-74 (Tex. 1988)). However, "[d]amages for diminution in value[8] and damages for cost of repairs[9] are not always duplicative. Diminution in value does not duplicate the cost of repairs if the diminution is calculated based on a comparison of the original value of the property and the

---

[7] Plaintiff cites Tex. Bus. & Com. Code Ann. § 2A.532 for the proposition that "damages to property caused by the lessee, or the responsibility of the lessee, are additional to any other recovery permitted by law." (Document No. 46 at 11). The statute states that "[i]n addition to any other recovery permitted by this chapter or other law, the lessor may recover from the lessee an amount that will fully compensate the lessor for any loss of or damage to the lessor's residual interest in the goods caused by the default of the lessee." This argument fails for multiple reasons. First, there is no evidence that this statute abrogates case law on double recovery. Second, the statute does not permit double recovery; it merely allows a lessor to seek "full" compensation. Double recovery would be *more* than full compensation. Finally, Plaintiff has failed to demonstrate diminution of value damages, regardless of this statute.

[8] This is the same as what Plaintiff refers to as "diminished value" or "depreciation." (Document No. 46 at 13).

[9] Bauer received damages for the cost of repairs from its insurance company. (Document No. 26-1 at 8).

value *after repairs are made.*" *Id*. (citing *Ludt v. McCollum*, 762 S.W.2d 575, 576 (Tex. 1988)).

In this case, Plaintiff does not offer any evidence as to the value of the Rig after repairs,[10] but merely estimates depreciation as 15% of the value of the Rig in October 2012 ($1,398,750, pursuant to the sales contract). (Document No. 46-3 at 3). Fifteen percent "represents the industry standard[11] for one year of depreciation." *Id*. at 3. While it may be true that a repaired rig is worth less than one that has never been damaged, Plaintiff does not offer any evidence of this decrease in value. Instead, Plaintiff estimates depreciation as a percentage of the value of the undamaged Rig. Without evidence of "the permanent reduction in market value a*fter repairs*," Plaintiff cannot demonstrate diminution in value damages. *Ludt*, 762 S.W.2d at 576 (emphasis added). *See also Blackstock v. Dudley*, 12 S.W.3d 131, 135 (Tex. App. 1999) (Court did not allow both diminution award and repair costs where evidence was limited to pre-repair reduction in value.); *Parkway*, 901 S.W.2d at 441 (Court did not allow diminution in value damages as well as damages for cost of repairs, where "appraiser calculated the diminution in value by comparing the original value of the house to the value of the *unrepaired* house.").

Plaintiff bears the burden of demonstrating the elements of its case. "The elements of a breach of contract[12] claim are (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) resulting damages to the plaintiff." *Rice v. Metro. Life Ins. Co.*, 324 S.W.3d 660, 666 (Tex. App. 2010) (citations omitted). Plaintiff seeks money damages, the fourth element, but has presented no evidence as to the value of the Rig after repairs, despite having ample opportunity to do so. This

---

[10] The Rig was not repaired by Plaintiff, but was sold as is. This obviously complicates Plaintiff's ability to estimate its value after repair, but does not preclude it.

[11] It is not necessary for the Court to discuss the legitimacy of this industry standard in this opinion.

[12] NAC argues that, because Bauer non-suited its property damage claim, "there is no applicable cause of action asserted for which the depreciation measure of damages can be recovered." (Document No. 39 at 10). However, the Court will analyze the request for depreciation damages as part of Bauer's breach of contract claim, as framed in Bauer's Amended Complaint. (Document No. 26-1 at 12).

"complete failure of proof concerning an essential element of [Plaintiff's] case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Thus there is no genuine issue of material fact on this claim, and summary judgment is appropriate.[13] *Healix Infusion Therapy, Inc. v. Helix Health, LLC*, 737 F. Supp. 2d 648, 657 (S.D. Tex. 2010) (In a breach of contract case, the Court granted defendant's motion for summary judgment regarding money damages where plaintiff failed to present any evidence thereof.). *See also Prunty v. Arkansas Freightways, Inc.*, 16 F.3d 649, 652 (5th Cir. 1994) ("It is truistic, indeed elementary, that one who seeks compensatory damages must present evidence of those damages. Dan B. Dobbs, Remedies § 3.2, at 140 (1973). Hence, when one of the *prima facie* elements of a claim is damages and the claimant fails to introduce evidence of those damages, he or she commits a fatal error.") (affirming district court's denial of compensatory damages); *Versata Software, Inc. v. Internet Brands, Inc.*, 902 F. Supp. 2d 841, 858-59 (E.D. Tex. 2012), *aff'd*, 550 F. App'x 897 (Fed. Cir. 2014) ("In contract cases, injury (or 'damage') can often be remedied only by an award of 'damages,' and often only money damages are sought. If that is the case, proof of money damages is, of course, essential to recovery.").

**Conclusion**

    The Court hereby

    ORDERS that Defendant's Motion for partial summary judgment is GRANTED. Bauer-Pileco, Inc. is not entitled to recover lost rental payments for the time period of September 16, 2013 to January 19, 2015, and Bauer-Pileco, Inc. is not entitled to recover depreciation damages in the amount of $209,812.50.

---

[13] The Court does not need to consider the parties' additional arguments regarding depreciation.

SIGNED at Houston, Texas, this 5th day of August, 2016.

                                          MELINDA HARMON
                                    UNITED STATES DISTRICT JUDGE